## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RONALD GAINES, as Personal
Representative for the Estate of
RONALD POWERS, Deceased,

     Plaintiff,

v.

COUNTY OF WAYNE,
SERGEANT LEONARD DAVIS,
SERGEANT STEVEN M. HUNTER,
SHIFT COMMAND SERGEANT
JEREMY LUCAS, INFIRMARY
SERGEANT MICHAEL GATSON, and
OFFICER SHANIQUE MADDOX,
in Their Individual and Official
Capacities; WELLPATH LLC, f/k/a
CORRECT CARE SOLUTIONS, LLC;
and LATANYA MEADOWS, R.N.,
jointly and severally.

     Defendants.

Case No.
Hon.

_____

GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
Fieger, Fieger, Kenney & Harrington, P.C.
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555
d.dworetsky@fiegerlaw.com

_____

## COMPLAINT, AFFIDAVIT OF MERIT,
## AND DEMAND FOR JURY TRIAL

{00877750.DOCX}

**NOW COMES**, Plaintiff, RONALD GAINES, as Personal Representative for the Estate of RONALD POWERS, deceased, by and through his attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., and for his Complaint, Affidavit of Merit, and Demand for Jury Trial against the above-named Defendants, Plaintiff hereby states as follows:

**JURISDICTION AND VENUE**

1.      This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the statutes and common law of the State of Michigan.

2.      This court has jurisdiction over this cause of action under the provisions of 28 U.S.C. §§ 1331 and 1343 and pendent jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

3.      The unlawful actions alleged in this Complaint took place within the City of Detroit, County of Wayne, State of Michigan, and as such jurisdiction lies in the United States District Court for the Eastern District of Michigan (Southern Division).  Venue is proper under 28 U.S.C. §1391(b).

4.     The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs and attorney fees.

## PARTIES

5.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

6.     At all times relevant to this lawsuit, RONALD POWERS, was a resident of the City of Detroit, County of Wayne, State of Michigan.

7.     Plaintiff, RONALD GAINES, is the son and duly appointed Personal Representative for the Estate of RONALD POWERS, deceased, who lives in the City of Detroit, County of Wayne, State of Michigan.

8.     At all times relevant hereto, Defendant COUNTY OF WAYNE ("Wayne County") was a municipal corporation, duly organized in carrying on governmental functions in the County of Wayne, State of Michigan, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Wayne County Jail.

9.     At all times relevant hereto, Defendant SERGEANT LEONARD DAVIS was a sergeant at the Wayne County Jail, employed by WAYNE COUNTY, who was acting under the color of state law, within the course and scope of his employment with WAYNE COUNTY and was

acting under the color and pretense of ordinances, regulations, laws and customs of WAYNE COUNTY, and is being sued in his individual and official capacities.

10. At all times relevant hereto, Defendant SERGEANT STEVEN M. HUNTER was a sergeant at the Wayne County Jail, employed by WAYNE COUNTY, who was acting under the color of state law, within the course and scope of his employment with WAYNE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of WAYNE COUNTY, and is being sued in his individual and official capacities.

11. At all times relevant hereto, Defendant SHIFT COMMAND SERGEANT JEREMY LUCAS was a sergeant at the Wayne County Jail, employed by WAYNE COUNTY, who was acting under the color of state law, within the course and scope of his employment with WAYNE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of WAYNE COUNTY, and is being sued in his individual and official capacities.

12. At all times relevant hereto, Defendant INFIRMARY SERGEANT MICHAEL GATSON was a sergeant at the Wayne County Jail, employed by WAYNE COUNTY, who was acting under the color of

state law, within the course and scope of his employment with WAYNE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of WAYNE COUNTY, and is being sued in his individual and official capacities.

13.    At all times relevant hereto, Defendant OFFICER SHANIQUE MADDOX was a police officer at the Wayne County Jail, employed by WAYNE COUNTY, who was acting under the color of state law, within the course and scope of his employment with WAYNE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of WAYNE COUNTY, and is being sued in her individual and official capacities.

14.    WAYNE COUNTY is responsible for, and does in fact, hire, train, supervise, and instruct deputies, Wayne County Jail detention officers, and jail staff of all grades in the performance of their duties.

15.    At all times relevant hereto Defendant WELLPATH LLC, f/k/a CORRECT CARE SOLUTIONS, LLC ("WELLPATH") a foreign limited liability Company and/or corporation that conducts regular business in Wayne County, Michigan, including at 570 Clinton Street, Detroit, Michigan, 48226.

16.     Upon information and belief Defendant, WELLPATH, has the registered agent of Corporate Creations Network Inc., 28175 Haggerty Road, Novi, MI 48377.

17.     Upon information and belief, Defendant, LATANYA MEADOWS, R.N. (hereinafter "MEADOWS") is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Wayne, State of Michigan.

18.     At all times relevant hereto, Defendant, MEADOWS was engaged in the practice of nursing in the County of Wayne, State of Michigan, and held herself out to the public in general, and to Plaintiff in particular, as a skilled and competent nurse, capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to Plaintiff in particular.

19.     At all times relevant hereto, Defendant, MEADOWS was the actual, apparent, and/or ostensible principal, agent, servant, and/or employee of Defendant, WELLPATH, and at all times relevant hereto, was acting within the course and scope of her agency and/or employment with Defendant, WELLPATH when the medical malpractice/negligence alleged herein was committed, thereby imposing vicarious liability upon the corporate Defendants WELLPATH.

20.    Defendant WELLPATH, is vicariously liable for the actions and inactions of all of its agents, ostensible agents, and/or employees whether physicians, residents, nursing staff, or other healthcare providers as set forth herein and incorporated by reference herein.

21.    Defendant WELLPATH is further liable in its own capacity for its own actions and inactions of negligence, gross negligence, and/or professional malpractice.

## FACTUAL STATEMENT

22.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

23.    At all times relevant hereto, RONALD POWERS was 67 years old, and had two dialysis ports that protruded clearly from his chest for dialysis treatment.

24.    On Friday, December 8, 2017, RONALD POWERS was driving home from dialysis treatment with a friend, Monique Baker.

25.    At about 11:10 a.m., RONALD POWERS was pulled over by Wayne State University police officers and cited for failing to signal.

26. RONALD POWERS was then arrested for a 22-year-old warrant issued in 1996 stemming from a failure to attend a court ordered class on a nonviolent offense.

27. Monique Baker informed the officers of RONALD POWERS' health conditions.

28. Regardless, the dialysis port protruding from his chest was visible.

29. RONALD POWERS was then taken to the Wayne County Jail, fully cooperative and without incident.

30. At or about 12:08 p.m., RONALD POWERS was booked into the Wayne County Jail.

31. Shortly after RONALD POWERS was booked, his daughter, Ronyetta Powers, called the Wayne County Jail to inform them of her father's health conditions and to let them know that he required dialysis treatment.

32. Ronyetta Powers was then told that RONALD POWERS would need to wait until Monday morning to be arraigned on his 22-year-old warrant.

33. The Wayne County Jail communicated with the facility where RONALD POWERS received his regularly scheduled dialysis treatments

and were once again made aware of RONALD POWERS' medical needs and dialysis ports.

34. At all times relevant hereto, Defendant officers SERGEANT LEONARD DAVIS, SERGEANT STEVEN M. HUNTER, SHIFT COMMAND SERGEANT JEREMY LUCAS, and INFIRMARY SERGEANT MICHAEL GATSON were on duty at the Wayne County Jail.

35. At 12:18 p.m., RONALD POWERS was moved to Room 4 of the housing area of the Division 1 Infirmary.

36. RONALD POWERS remained in Room 4 of the Infirmary until December 11, 2017.

37. On December 11, 2017, at around 7:10 a.m., RONALD POWERS was transported to the 36th District Court where his 22-year-old warrant was discharged and upon information and belief, RONALD POWERS was made to believe by Wayne County Jail staff that he would be released.

38. Ronyetta Powers contacted the Wayne County Jail to attempt to arrange pick up for RONALD POWERS, but was now told he would have to remain at the jail for arraignment on a 12-year-old "no valid driver's license" charge.

39.     At or about 4:11 p.m., RONALD POWERS was transported back to Room 4 at the Wayne County Jail.

40.     After being transported back to his cell, RONALD POWERS stated that he needed to be released for dialysis treatment scheduled for the next day with his treating physician.

41.     Defendants observed that after his court hearing, RONALD POWERS virtually ate no food.

42.     Defendants observed that after his court hearing, RONALD POWERS did not receive any dialysis treatment.

43.     Defendants SERGEANT LEONARD DAVIS and SERGEANT STEVEN M. HUNTER then observed that RONALD POWERS was out of his bed and distraught, but despite knowing that RONALD POWERS' had serious health conditions such as liver cancer, kidney disease, and two exposed dialysis ports that needed monitoring, Defendants did not provide RONALD POWERS with immediate medical attention but rather told him to "get back in bed."

44.     On December 12, 2017, at or around 2:57 a.m., DEFENDANTS SERGEANT LEONARD DAVIS and SERGEANT STEVEN M. HUNTER observed that RONALD POWERS was unable to sleep, pacing back and forth in his cell, tampering with others' property,

standing near other inmates' beds, and "talking to himself," as noted in the Wayne County Jail Activity Log.

45.     SERGEANT LEONARD DAVIS and SERGEANT STEVEN M. HUNTER were called to RONALD POWERS' cell.

46.     Rather than call for and/or ensure appropriate medical assistance given RONALD POWERS' condition and behavior, SERGEANT LEONARD DAVIS and SERGEANT STEVEN M. HUNTER instead moved and/or allowed the moving of RONALD POWERS to an isolated cell on the second floor of the Wayne County Jail and provided him no further medical assistance.

47.     SERGEANT LEONARD DAVIS and SERGEANT STEVEN M. HUNTER then locked RONALD POWERS in the isolated holding cell and left him alone with no medical assistance or monitoring.

48.     The Homicide Scene Investigation Report notes that "Powers was alone in the room and unobserved."

49.     Defendants SHIFT COMMAND SERGEANT JEREMY LUCAS and INFIRMARY SERGEANT MICHAEL GATSON were notified that RONALD POWERS was moved to an isolated and unobserved cell.

50.   At or around 4:00 a.m., an officer was doing a security round, when he observed RONALD POWERS lying on his back in a pool of blood, blood spurting out of his dialysis port, and blood soaking his shirt.

51.   The officer observed a large pool of blood accumulated around his head and called for the jail nurses to assist.

52.   An emergency code was initiated and nurses Yolesta, Sherrod, Venus Graham, Latonya Meadows, Telaviv Clark, and Patricia Neeley responded.

53.   Sometime between 4:00 a.m. and 4:11 a.m., the responding nurses attempted cardiopulmonary resuscitation on RONALD POWERS, but he was unresponsive.

54.   Medical staff attempted to clamp RONALD POWERS' dialysis port but were unsuccessful and blood continued to spurt out.

55.   Sometime between 4:00 a.m. and 4:11 a.m., the responding nurses brought an Automatic External Defibrillator device to the jail cell and defibrillation was started on RONALD POWERS, but he was unresponsive.

56.   At around 4:11 a.m., the Wayne County Jail Activity Log notes that RONALD POWERS was "released" and "deceased."

57.    At around 4:15 a.m., EMS arrived and transported RONALD POWERS to a local hospital where he was officially pronounced dead at 4:50 a.m.

58.    At approximately 8:00 a.m., Detroit Police were called to the Wayne County Jail to conduct a death investigation.

59.    Prior to the discovery of RONALD POWERS at approximately 4:00 a.m. in his isolated cell, no deputies or any other staff from the Wayne County Jail performed a physical check on RONALD POWERS.

60.    Despite knowledge of RONALD POWERS' sensitive health condition, including but not limited to kidney disease and visible dialysis ports, the defendant Wayne County Jail officers did not examine, observe, or provide medical treatment, from the time he was put in isolation to the discovery of RONALD POWERS on the floor in a pool of blood at around 4:00 a.m.

61.    At all times relevant hereto, the individually named Defendants failed to timely and/or appropriately perform physical jail cell checks as is required of them by WAYNE COUNTY's own policies and procedures.

62.    At all times relevant hereto, the Wayne County Jail was equipped with visual and audio monitoring systems, and the individually named Defendants failed to timely and/or appropriately monitor RONALD

POWERS and/or utilize the video and audio monitoring equipment as is required of them by WAYNE COUNTY's own policies and procedures.

63.     At all times during the incarceration of RONALD POWERS at the Wayne County Jail, RONALD POWERS behaved in such a fashion that was highly evident that he was experiencing a medical episode, was rapidly deteriorating, and needed prompt and immediate medical treatment.

64.     At all times relevant hereto, the individually named Defendants knew or should have known of RONALD POWERS' delicate state and deteriorating condition.

65.     At all times relevant hereto, the individually named Defendants failed to initiate close observation of RONALD POWERS, and/or take proper precautions to protect him, and/or take steps to properly and adequately monitor him.

66.     The individually named Defendants ignored RONALD POWERS and left him in the isolated holding cell without further monitoring until he was discovered unresponsive at around 4:00 a.m.

67.     Defendants are not entitled to governmental immunity and/or qualified immunity.

68.     At all times relevant to this Complaint, Defendant WELLPATH was performing health care services for Wayne County.

69.   WELLPATH received Mr. Powers' medical records confirming a history of liver and adrenal cancer, end stage renal disease requiring hemodialysis, and methadone for pain treatment.

70.   As Mr. Powers was being treated with methadone, a clinical opiate withdrawal scale ("COWS"), a scale used to measure opiate withdrawal symptoms, was started.

71.   Mr. Powers' COWS score was to be completed every 8 hours and discontinued if the score was < 12 for 72 hours, which would demonstrate only mild withdrawal symptoms.

72.   The receiving screening form indicated that Mr. Powers exhibited no suicidal thoughts, was not talking strangely, and was alert, appropriate, and logical.

73.   Mr. Powers was initially placed in general population; however, intake did not record his dialysis or dialysis shunt.

74.   On December 9, 2017, it was reported, on a Nurse Progress note, that Mr. Powers had not received his methadone and had an elevated blood pressure of 254/89.

75.   Mr. Powers was moved from general population to the infirmary for monitoring of his elevated blood pressure.

76.    Mr. Powers' COWS score was not taken by WELLPATH, and no dialysis was provided at all on December 11, 2017.

77.    By midnight, Mr. Powers was offered "as needed" medications, including Meclizine, Imodium A-D, and Tylenol, and an electrolyte drink; however, he had a COWS score of zero, with all responses charted as "no" to the Behavioral Health Screen questions.

78.    Later, Ronald Powers expressed his desire to go home and argued with an officer for several hours to be released, and at approximately 2:30 a.m., he began displaying erratic behavior, as described earlier in this Complaint.

79.    Officer Carey reported that he was tampering with the television, and pacing and standing over other inmates in the ward invading their personal space.  He also took the padding from the wheelchair of another inmate, and was keeping the other inmates awake by talking to himself.  Ronald Powers was under duress for the entire night, and stated that he was convinced that one of the officers was going to shoot him. A witness described Mr. Powers 'behavior as [he] "seemed out of his mind."

80.    At 2:45 a.m., Defendant MEADOWS, after being advised by Defendant HUNTER of Mr. Powers' erratic behavior, merely checked his blood glucose level, and allegedly the reading was normal.

81.     Mr. Powers, without further assessment or referral by Defendant MEADOWS, was determined to be "fine," and was moved from Infirmary room #4 to medical holding cell #1.

82.     Defendant MEADOWS, aware of Mr. Powers' erratic behavior, failed to advise her supervisor Nurse Sherrod of his erratic behavior, and failed to perform a nursing assessment to determine the cause of this erratic behavior.

83.     Yet, at 3:00 a.m., Defendant MADDOX observed Mr. Powers in the rear of the holding cell, standing at the bars of the cell and mumbling to himself.  She took no further action.

84.     At 4:00 a.m., Mr. Powers was discovered lying on the floor of his cell on his back with blood pooling around his head area, unresponsive. 4:00 a.m. was also the time reported to the Detroit Fire Department as his time of arrest.

85.     On-duty nurses in the infirmary from WELLPATH were alerted by the rounding officer that Mr. Powers required medical assistance in holding cell #1.  Vital signs were assessed, and continuous CPR started. While giving chest compressions blood was streaming from his dialysis port, until Nurse Clark eventually returned with a clamp for the tube.

86.     At 4:06:40 a.m., the Detroit Fire Department was dispatched. Nurse Sherrod reported that she called 911.

87.     Reports are inconsistent as to when the Code 2 was called.  At 4:07 a.m., a Code 2 was called in medical.

88.     On January 5, 2018, twenty-four (24) days after the death of Ronald Powers, Defendant MEADOWS added a late entry note for December 12, 2017, which indicated that she was notified by an officer regarding a request for a blood sugar assessment of a patient.  She writes that the blood sugar reading at that time was 93 mg/dl, that Mr. Powers appeared to be Alert and Oriented times 3, had no signs or symptoms of hypo/hyperglycemic reaction, and that Mr. Powers denied pain at the time.

**COUNT I**
**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**AGAINST DEFENDANTS DAVIS, HUNTER, LUCAS,**
**GATSON, MADDOX, AND COUNTY OF WAYNE**

89.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

90.     At all times mentioned herein, Defendants DAVIS, HUNTER, LUCAS, GATSON, and MADDOX were acting under color of law, and the ordinances, regulations, and/or customs of the Wayne County Jail and Defendant WAYNE COUNTY.  These individuals and Defendant WAYNE

COUNTY are collectively referred to herein as the "Wayne County Defendants."

91. At all times relevant hereto, the Wayne County Defendants subjected RONALD POWERS to a deprivation of his rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

92. Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendant WAYNE COUNTY and the individually named officers owed RONALD POWERS the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

93. Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, a detainee like RONALD POWERS had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

94. The conduct of Defendant WAYNE COUNTY, through the individually named Defendant officers, deprived RONALD POWERS of his clearly established rights, privileges, and immunities in violation of the

Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

95.    The Wayne County Defendants owed a duty to the general public, and specifically to RONALD POWERS, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to detainees, as well as to train, test, evaluate, review, and update its officers' abilities to function in a reasonable manner and in conformance with the laws of the United States and the State of Michigan relative to providing detainees with the appropriate and relevant medical attention to their known and well documented medical needs.

96.    Each and every one of the Wayne County Defendants violated RONALD POWERS' civil rights when they displayed deliberate indifference toward RONALD POWERS' serious medical condition in the following ways:

   a. Failure to properly train officers and jail personnel in the evaluation of whether a detainee needs medical treatment;

   b. Failure to provide RONALD POWERS with timely and/or immediate medical attention for a serious medical need;

   c. Failure to assure that RONALD POWERS was examined and/or treated after he exhibited signs of distress and erratic behavior as described previously, such as sleeplessness, tampering with the television and others' property, pacing around his cell, and talking to himself coupled with lack of food for a prolonged period;

d.  Failure to assure that RONALD POWERS was examined and/or treated after he exhibited signs of a medical episode;

e.  Failure to perform physical jail cell checks and/or otherwise abide by policies, if any, to ensure the physical well-being of detainees, specifically RONALD POWERS;

f.  Failure to timely and/or appropriately monitor RONALD POWERS utilizing the video and audio monitoring equipment with which the Wayne County Jail was equipped;

g.  Failure to adequately monitor the well-being of RONALD POWERS with knowledge that RONALD POWERS suffered from kidney disease and had two exposed dialysis ports;

h.  Failed to provide timely and/or immediate medical attention to RONALD POWERS;

i.  Allowing RONALD POWERS to go at least 12 hours with virtually no food intake knowing that he had specific dietary needs due to his medical conditions;

j.  Allowing RONALD POWERS, an inmate with known serious health conditions and two dialysis ports, to be left alone in an isolated cell with no supervision/monitoring, or ignoring of same, while prescribed more than half a dozen medications, at least three of which cause dizziness, weakness, and lightheadedness;

k.  Allowing RONALD POWERS, a 67-year-old inmate with known serious health conditions and two dialysis ports, to be left alone in an isolated cell with no supervision/monitoring, or ignoring of same, while on medications with serious side effects and that create a fall risk, such as muscle relaxants, sedatives, morphine, and opiates;

l.  Failure to timely discover that RONALD POWERS was in need of medical attention, despite his being in the same position on the ground for a prolonged period of time, with blood

spurting out of his dialysis port, a pool of blood encompassing his head, and blood soaking his shirt; and

m. Any and all other breaches that become known during the course of discovery which is hereby incorporated by reference.

97.    The acts and/or omissions of the Wayne County Defendants violated the civil rights of RONALD POWERS, which directly and proximately caused his untimely death, and RONALD POWERS' heirs, including Plaintiff RONALD GAINES, claim and are entitled to recover all damages allowable under the law, including, but not limited to the following:

a. Conscious physical pain and suffering endured by RONALD POWERS prior to his death;

b. Medical and hospital expenses;

c. Funeral and burial expenses;

d. Loss of financial support from RONALD POWERS;

e. Loss of society and companionship of RONALD POWERS;

f. Death;

g. Any and all other damages allowed by law; and

h. All other damages learned through the course of discovery and otherwise recoverable under the law.

98.    The acts and/or omissions of the Wayne County Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a

conscious or reckless disregard for the rights of RONALD POWERS and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

99.    Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, RONALD GAINES, as Personal Representative of the Estate of RONALD POWERS, respectfully requests this Honorable Court enter a judgment in his favor against the Wayne County Defendants and award an amount in excess of Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT II
## FAILURE TO TRAIN, INADEQUATE POLICIES and/or PROCEDURES, CUSTOMS, AND PRACTICES, AND FAILURE TO SUPERVISE – DELIBERATE INDIFFERENCE
## DEFENDANT, WAYNE COUNTY

100.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

101.    Pursuant to 42 USC § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant WAYNE COUNTY owed RONALD POWERS certain duties to properly

supervise, monitor, and train its officers to supervise the jail's detainees so that they would detect serious medical conditions and facilitate prompt and proper medical attention.

102. Defendant WAYNE COUNTY breached these duties via its and/or absence thereof its policies, procedures, regulations, customs and/or lack of and/or inadequate training, and thus exhibited a deliberate indifference toward its detainees, and specifically toward RONALD POWERS, when WAYNE COUNTY:

    a. Failed to staff the jail with competent officers, and specifically, failed to ensure that Defendants SERGEANT LEONARD DAVIS, SERGEANT STEVEN M. HUNTER, SHIFT COMMAND SERGEANT JEREMY LUCAS, INFIRMARY SERGEANT MICHAEL GATSON, and OFFICER SHANIQUE MADDOX would respond competently to events involving inmates at the jail;

    b. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees, including but not limited to those, such as Plaintiff's decedent, who have medical conditions of which they have been previously provided notice, and specifically in this case, where notice was provided by Monique Baker, Ronyetta Powers, and RONALD POWERS;

    c. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of detainees;

    d. Failed to ensure officers conduct timely and adequate physical jail cell checks on detainees to ensure the physical well-being of each detainee, and specifically RONALD POWERS;

e. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees to ensure the well-being of each detainee, specifically RONALD POWERS;

f. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of detainees utilizing the audio/visual system with which the jail was equipped;

g. Failed to provide training and/or adequate training to its officers for the proper use of its audio/visual system with which the jail was equipped to ensure the well-being of each detainee;

h. Failed to provide training and/or adequate training to its officers to ensure the proper execution of policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees to ensure the well-being of each detainee, specifically RONALD POWERS;

i. Failed to provide training and/or adequate training to its officers to recognize the signs of a medical episode and the need for immediate medical attention;

j. Failed to supervise its officers to ensure that its policies, regulations, procedures, customs, are being properly executed and that each detainee's, and specifically, RONALD POWERS' constitutional rights are being protected;

k. Failed to supervise its officers to ensure the adequate monitoring and supervision of detainees who have serious medical needs which require medical attention;

l. Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures, regulations and/or customs, if any, relative to recognizing the need for medical care and providing immediate medical attention to detainees;

m. Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures,

regulations and/or customs, if any, regarding the frequency and/or sufficiency of physical jail checks, and/or monitoring and/or supervision of detainees by utilizing the audio/visual equipment with which the Wayne County Jail was equipped; and

n.  All other breaches learned through the course of discovery which are hereby adopted by reference.

103.  The acts and/or omissions of Defendant WAYNE COUNTY violated the civil rights of RONALD POWERS, which directly and proximately caused his untimely death, and his heirs, including Plaintiff RONALD GAINES, claim and are entitled to recover all damages allowable under the law, including, but not limited to the following:

a.  Conscious physical pain and suffering endured by RONALD POWERS prior to his death;

b.  Medical and hospital expenses;

c.  Funeral and burial expenses;

d.  Loss of financial support from RONALD POWERS;

e.  Loss of society and companionship of RONALD POWERS;

f.  Death;

g.  Any and all other damages allowed by law; and

h.  All other damages learned through the course of discovery and otherwise recoverable under the law.

104.  The acts and/or omissions of the Wayne County Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a

conscious or reckless disregard for the rights of RONALD POWERS and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

105.   Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, RONALD GAINES, as Personal Representative of the Estate of RONALD POWERS, deceased, respectfully requests this Honorable Court enter a judgment in his favor against Defendant WAYNE COUNTY and award an amount in excess of Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT III
### GROSS NEGLIGENCE
### DEFENDANTS DAVIS, HUNTER, LUCAS, GATSON, MADDOX, AND COUNTY OF WAYNE

106.   Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

107.   At all relevant times, the individually named officers were acting within the course and scope of their employment with Defendant WAYNE COUNTY.

108.   The Wayne County Defendants owed RONALD POWERS the duty to provide medical care for his obviously serious medical needs.

109.   These Defendants, acting within the scope of their employment, breached this duty and were grossly negligent, as defined in MCL 691.1407(2)(c), when they acted so recklessly as to demonstrate a substantial lack of concern as to whether injury would result toward RONALD POWERS and with disregard for his health, safety, and constitutional and/or statutory rights.

110.   At all times relevant, the Wayne County Defendants were grossly negligent when they:

a. Failed to monitor and/or adequately monitor RONALD POWERS, especially after being notified by his treating physicians, as well as Monique Baker, Ronyetta Powers, and RONALD POWERS of his medical conditions;

b. Allowing RONALD POWERS to go at least 12 hours with virtually no food intake knowing that he had specific dietary needs due to his medical conditions;

c. Failed to monitor and/or adequately monitor or ignored RONALD POWERS, specifically when he had been in the same position on the ground for an extended period, and other obvious indicators of a medical episode were present such as a pool of blood surrounding his head and blood spurting out of his dialysis port;

d. Allowing RONALD POWERS, an inmate with known serious health conditions and two dialysis ports to be left alone in an isolated cell with no supervision or ignored, while prescribed

nearly a dozen medications, at least three of which cause dizziness, weakness, and lightheadedness;

e.  Allowing RONALD POWERS, a 67-year-old inmate with known serious health conditions and two dialysis ports to be left alone in an isolated cell with no supervision or ignored, while on medications with serious side effects and that create a fall risk, such as muscle relaxants, sedatives, morphine and opiates;

f.  Failed to provide timely and/or immediate medical attention to RONALD POWERS;

g.  Failed to conduct and/or adequately conduct physical jail cell checks on detainees to ensure the physical well-being of each detainee and/or ignored detainees' medical needs, and specifically RONALD POWERS;

h.  Failed to monitor and/or adequately monitor detainees, by way of the audio/visual system with which the jail was equipped or otherwise, to ensure the well-being of each detainee and/or ignored detainees' medical needs, and specifically RONALD POWERS;

i.  Failed to recognize the signs of a medical episode and RONALD POWERS' need for immediate medical attention and/or ignored the same;

j.  Failed to supervise and ensure that RONALD POWERS' constitutional rights were protected;

k.  Failure to assure that RONALD POWERS was examined and/or treated after he exhibited signs of distress and erratic behavior as described previously, such as sleeplessness, tampering with the television and others' property, pacing around his cell, and talking to himself coupled with lack of food for a prolonged period;

l.  Failed to abide by the policies, if any, required by WAYNE COUNTY for the proper monitoring and supervision of

detainees to ensure the well-being, safety, and health of each detainee, and to provide medical attention; and

m. All other breaches learned through the course of discovery which are hereby adopted by reference.

111. The grossly negligent acts and/or omissions of the Wayne County Defendants directly and proximately caused RONALD POWERS' untimely death, and his heirs, including Plaintiff RONALD GAINES, claim and are entitled to recover all damages allowable under the law, including, but not limited to the following:

a. Conscious physical pain and suffering endured by RONALD POWERS prior to his death;

b. Medical and hospital expenses;

c. Funeral and burial expenses;

d. Loss of financial support from RONALD POWERS;

e. Loss of society and companionship of RONALD POWERS;

f. Death;

g. Any and all other damages allowed by law;

h. All other damages learned through the course of discovery and otherwise recoverable under the law.

**WHEREFORE,** Plaintiff, RONALD GAINES, as Personal Representative of the Estate of RONALD POWERS, deceased, respectfully requests this Honorable Court enter a judgment in his favor against the

Wayne County Defendants and award an amount in excess of Seventy-Five

Thousand ($75,000) Dollars, exclusive of costs, interest, and attorney fees,

as well as an award for punitive damages.

**COUNT IV**
**MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE –**
**LIABILITY OF DEFENDANT WELLPATH**

112.   Plaintiff hereby reiterates and re-alleges each and every

allegation contained in the preceding paragraphs of this Complaint, as if

fully stated herein word for word and paragraph by paragraph.

113.   Pursuant to MCL 333.20141 and MCL 333.21513, Defendant

WELLPATH is responsible for all phases of the operation of its medical

facility, operations, and/or practice, selection of medical staff, and quality of

care rendered in its medical facility, operation, and/or practice.

114.   When presented with a patient like RONALD POWERS, the

standard of practice required Defendant WELLPATH to provide care and

treatment consistent with that of a reasonable and prudent medical facility,

provider, and/or practice.

115.   When presented with a patient like RONALD POWERS,

Defendant WELLPATH, as well as through its agents and employees,

including but not limited to Defendant, MEADOWS, had a direct duty

pursuant to MCL 333.20141 and MCL 333.21513, to do all of the following,

which WELLPATH failed to do, and is, therefore, negligent:

a. Provide RONALD POWERS proper medical care based on his known medical history, including but not limited to appropriate observation, referral, and treatment;

b. Employ or contract with physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c. Adequately supervise, direct, train, monitor and control these healthcare providers;

d. Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

e. Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

f. Diligently and thoroughly assess, and accurately document RONALD POWERS' behavior;

g. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

h. Appreciate the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

    i.  Appropriately observe patient's behavior and recognize that RONALD POWERS was at an increased risk for injury to himself;

    j.  Diligently and thoroughly assess RONALD POWERS' condition based upon his behavior;

    k.  Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding RONALD POWERS' behavior;

    l.  Ensure that RONALD POWERS' vital signs and COWS score were assessed, assessed properly, and accurately documented;

    m. Timely and appropriately consider RONALD POWERS' health history and symptoms together with presentation; and

    n.  Other acts of general negligence, gross negligence, and/or professional negligence yet to be determined.

116.  At all times relevant to the care and treatment of RONALD POWERS, Defendant WELLPATH failed in all respects to comply with the applicable standard of practice or care and was therefore professionally negligent in its care and treatment of RONALD POWERS.

117.  That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, and/or professional malpractice by Defendant WELLPATH, Plaintiff's decedent, RONALD POWERS,

sustained horrific injuries ultimately leading to his untimely death, as described herein.

118.   The above breaches of the standard of care by Defendant WELLPATH were the proximate cause of RONALD POWERS' injuries and ultimate death, and the injuries/damages of the Plaintiff Estate, as described herein.

**WHEREFORE,** Plaintiff, RONALD GAINES, as Personal Representative of the Estate of RONALD POWERS, deceased, respectfully requests this Honorable Court enter a judgment in his favor against Defendant WELLPATH and award an amount in excess of Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT V**
**MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE**
**OF DEFENDANT LATANYA MEADOWS, R.N. and VICARIOUS**
**LIABILITY OF DEFENDANT WELLPATH**

119.   Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

120.   The standard of care applicable to MEADOWS, and any other nurses involved in the care and treatment of Plaintiff's Decedent, RONALD POWERS, is that of a reasonable and prudent nurse, the skill and care

ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

121. The applicable standard of practice/care required that Defendant, MEADOWS, and any nurses under her supervision involved in the care and treatment of RONALD POWERS, timely and appropriately do all of the following, which each failed to do, and are therefore are professionally negligent:

a. Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

b. Diligently and thoroughly assess, and accurately document RONALD POWERS' behavior;

c. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

d. Appreciate the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

e. Appropriately observe patient's behavior and recognize that RONALD POWERS was at an increased risk for injury to himself;

f. Diligently and thoroughly assess RONALD POWERS' condition based upon his behavior;

g. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her

supervisor(s) were contacted regarding RONALD POWERS' behavior;

h. Ensure that RONALD POWERS' vital signs and COWS score were assessed, assessed properly, and accurately documented;

i. Timely and appropriately consider RONALD POWERS' health history and symptoms together with presentation; and

j. Other acts of general negligence, gross negligence, and/or professional negligence yet to be determined.

122. At all times relevant to the care and treatment of RONALD POWERS, Defendant MEADOWS and any nurses under her supervision, failed in all respects to comply with the applicable standard of practice or care and were therefore professionally negligent in their care and treatment of RONALD POWERS.

123. That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, and/or professional malpractice by Defendant MEADOWS, Plaintiff's Decedent, RONALD POWERS, sustained horrific injuries ultimately leading to his untimely death, as described herein.

124. The above breaches of the standard of care by Defendant MEADOWS, and any nurses under her supervision were the proximate

cause of RONALD POWERS' injuries and ultimate death, and the injuries/damages of the Plaintiff Estate, as described herein.

125.   Defendant WELLPATH, in addition to its liability for its own acts and omissions as set forth herein, is further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment to RONALD POWERS, including, but not limited to Defendant MEADOWS, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, RONALD GAINES, as Personal Representative of the Estate of RONALD POWERS, deceased, respectfully requests this Honorable Court enter a judgment in his favor against Defendants MEADOWS and WELLPATH and award an amount in excess of Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT VI**
**GENERAL NEGLIGENCE/GROSS NEGLIGENCE**
**OF DEFENDANT LATANYA MEADOWS, R.N. and VICARIOUS**
**LIABILITY OF DEFENDANT WELLPATH**

126.   Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

127.   At all times relevant hereto, Defendant, MEADOWS and Defendant WELLPATH's staff had a duty to act as a reasonably careful person would act under the same or similar circumstances that existed at the time of the subject incident.

128.   At all times relevant hereto, Defendant, MEADOWS and the staff of Defendant WELLPATH owed RONALD POWERS the following duties in particular by the way of illustration and not limitation, and breached the same by:

    a.  Negligently and recklessly failing to perform a health history and physical examination and timely and accurately documenting the results;

    b.  Negligently and recklessly failing to diligently and thoroughly assess, and accurately documenting RONALD POWERS' behavior;

    c.  Negligently and recklessly failing to arrive at an appropriate differential diagnosis upon examination;

    d.  Negligently and recklessly failing to appreciate the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

    e.  Negligently and recklessly failed to appropriately observe patient's behavior and recognize that RONALD POWERS was at an increased risk for injury to himself;

    f.  Diligently and thoroughly assess RONALD POWERS' condition based upon his behavior;

g. Negligently and recklessly failed to ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding RONALD POWERS' behavior;

h. Negligently and recklessly failed to ensure that RONALD POWERS' vital signs and COWS score were assessed, assessed properly, and accurately documented;

i. Negligently and recklessly failed to timely and appropriately consider RONALD POWERS' health history and symptoms together with presentation; and

j. Other acts and/or omissions of negligence and/or gross negligence yet to be determined.

129.   The above described acts of negligence and/or gross negligence by Defendant MEADOWS and/or the WELLPATH staff proximately caused RONALD POWERS' injuries and untimely death, and the injuries/damages of the Plaintiff Estate, as described herein.

130.   As a direct result of the negligence and/or gross negligence by Defendant MEADOWS and the staff of WELLPATH in the care provided for RONALD POWERS, the heirs at law of RONALD POWERS, including but not limited to Plaintiff RONALD GAINES, have sustained injuries and damages compensable under the Michigan Wrongful Death Act including but not limited to reasonable medical, hospital, funeral and burial expenses,

loss of financial support, loss of earnings, loss of future gifts, and loss of society and companionship.

131.  Defendant WELLPATH  is liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment to RONALD POWERS, including, but not limited to Defendant MEADOWS, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, RONALD GAINES, as Personal Representative of the Estate of RONALD POWERS, respectfully requests this Honorable Court enter a judgment in his favor against Defendant MEADOWS and Defendant WELLPATH and award an amount in excess of Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

Respectfully submitted,

***FIEGER,    FIEGER,    KENNEY    &
HARRINGTON, P.C.***

By:_/s/  David A. Dworetsky_____
DAVID A. DWORETSKY (P67026)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
Dated: May 12, 2020         (248) 355-5555

## <u>AFFIDAVIT OF MERITORIOUS CLAIM OF BETTY PEDERSON-CHASE, RN PURSUANT TO MCL 600.2912d</u>

STATE OF MISSOURI  )
         ) ss
COUNTY OF  ST. CHARLES  )

   I hereby certify that I have reviewed the Notice of Intent to File Claim and all medical records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice.  I am a licensed registered nurse, and during the year immediately preceding the date of the occurrence that is the basis for this action, I devoted a majority of my professional time to the active clinical practice of nursing.  I further reserve the right to add or amend this Affidavit as additional information becomes available.  My opinions are preliminary because I have not reviewed any deposition testimony and may not have reviewed complete medical records.   I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

A.  <u>THE APPLICABLE STANDARD OF CARE OR PRACTICE</u>

   1.  **LaTanya Meadows, R.N.**: The standard of care or practice applicable to LaTanya Meadows, R.N., is that of a reasonable and prudent nurse, the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.  At a minimum, LaTanya Meadows, R.N., had a duty to:

       a.  Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

       b.  Diligently and thoroughly assess, and accurately document Ronald Powers' behavior;

       c.  Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

{00877008.DOCX}

d.      Appreciate the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

e.      Appropriately observe patient's behavior and recognize that Ronald Powers was at an increased risk for injury to himself;

f.      Diligently and thoroughly assess Ronald Powers' condition based upon his behavior;

g.      Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding Ronald Powers' behavior;

h.      Ensure that Ronald Powers' vital signs and COWS score were assessed, assessed properly, and accurately documented;

i.      Timely and appropriately consider Ronald Powers' health history and symptoms together with presentation; and

j.      Other acts of professional negligence yet to be determined.

2.      **Wellpath LLC, f/k/a Correct Care Solutions, LLC ("Wellpath LLC"):**

The standard of care or practice applicable to Wellpath LLC, is that of a reasonable and prudent medical facility/provider. At a minimum, Wellpath LLC, through its agents and employees, had a duty to, and had a direct duty pursuant to MCLA 333.21513 and MCLA 333.20141, to:

a. Provide Ronald Powers proper medical care based on his known medical history, including but not limited to appropriate observation, referral, and treatment;

b.      Employ or contract with physicians, residents and nursing staff who possess that degree of skill and learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c.      Adequately supervise, direct, train, monitor and control these healthcare providers;

d.      Draft, promulgate, adopt and/or enforce appropriate rules, regulations, policies and procedures which would enable and engender to

its healthcare providers, including but not limited to, its physicians and nursing staff, to render appropriate and timely treatment to patients and ensure the adequacy of the experience level and expertise of these providers;

e.      Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

f.      Diligently and thoroughly assess, and accurately document Ronald Powers' behavior;

g.      Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

h.      Appreciate the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

i.      Appropriately observe patient's behavior and recognize that Ronald Powers was at an increased risk for injury to himself;

j.      Diligently and thoroughly assess Ronald Powers' condition based upon his behavior;

k.      Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding Ronald Powers' behavior;

l.      Ensure that Ronald Powers' vital signs and COWS score were assessed, assessed properly, and accurately documented;

m.      Timely and appropriately consider Ronald Powers' health history and symptoms together with presentation; and

n.      Other acts of professional negligence yet to be determined.

**B.      THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED**

1. **LaTanya Meadows, R.N.**: LaTanya Meadows, RN breached the applicable standard of practice or care when she negligently failed to:

a.      Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

b.     Diligently and thoroughly assess, and accurately document Ronald Powers' behavior;

c.     Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

d.     Appreciate the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

e.     Appropriately observe patient's behavior and recognize that Ronald Powers was at an increased risk for injury to himself;

f.     Diligently and thoroughly assess Ronald Powers' condition based upon his behavior;

g.     Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding Ronald Powers' behavior;

h.     Ensure that Ronald Powers' vital signs and COWS score were assessed, assessed properly, and accurately documented;

i.     Timely and appropriately consider Ronald Powers' health history and symptoms together with presentation; and

j.     Other acts of professional negligence yet to be determined.

2.     **Wellpath LLC:** Wellpath LLC, breached the applicable standard of practice or care when it negligently failed to:

a.     Provide Ronald Powers proper medical care based on his known medical history, including but not limited to appropriate observation, referral, and treatment;

b.     Employ or contract with physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c.     Adequately supervise, direct, train, monitor and control these healthcare providers;

d.     Draft, promulgate, adopt and/or enforce appropriate rules, regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its physicians and

nursing staff, to render appropriate and timely treatment to patients and ensure the adequacy of the experience level and expertise of these providers;

e.     Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

f.     Diligently and thoroughly assess, and accurately document Ronald Powers' behavior;

g.     Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

h.     Appreciate the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

i.     Appropriately observe patient's behavior and recognize that Ronald Powers was at an increased risk for injury to himself;

j.     Diligently and thoroughly assess Ronald Powers' condition based upon his behavior;

k.     Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding Ronald Powers' behavior;

l.     Ensure that Ronald Powers' vital signs and COWS score were assessed, assessed properly, and accurately documented;

m.     Timely and appropriately consider Ronald Powers' health history and symptoms together with presentation; and

n.     Other acts of professional negligence yet to be determined.


C.     **THE ACTIONS WHICH SHOULD HAVE BEEN TAKEN OR OMITTED BY THE HEALTHCARE PROFESSIONALS AND FACILITIES IN ORDER TO HAVE COMPLIED WITH THE APPLICABLE STANDARD OF CARE OR PRACTICE**

1.     **LaTanya Meadows, R.N.**: LaTanya Meadows, in order to achieve compliance with the applicable standard of care, LaTanya Meadows, R.N., should have:

a.     Diligently and thoroughly performed a health history and physical examination and timely and accurately documented the results;

b.     Diligently and thoroughly assessed, and accurately documented Ronald Powers' behavior;

c.     Diligently and thoroughly arrived at an appropriate differential diagnosis upon examination;

d.     Appreciated the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

e.     Appropriately observed patient's behavior and recognized that Ronald Powers was at an increased risk for injury to himself;

f.     Diligently and thoroughly assessed Ronald Powers' condition based upon his behavior;

g.     Ensured that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding Ronald Powers' behavior;

h.     Ensured that Ronald Powers' vital signs and COWS score were assessed, assessed properly, and accurately documented;

i.     Timely and appropriately considered Ronald Powers' health history and symptoms together with presentation; and

j.     Other acts of professional negligence yet to be determined.

2.     **Wellpath LLC:** Wellpath LLC, in order to achieve compliance with the applicable standard of care, Wellpath LLC, should have:

a.     Provided Ronald Powers proper medical care based on his known medical history, including but not limited to appropriate observation, referral, and treatment;

b.     Employed or contracted with physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c.     Adequately supervised, directed, trained, monitored and controlled these healthcare providers;

d.     Drafted, promulgated, adopted and/or enforced appropriate rules, regulations, policies and procedures which would have enabled and engendered  its healthcare providers, including but not limited to, its physicians and nursing staff, to render appropriate and timely treatment to

patients and ensure the adequacy of the experience level and expertise of these providers;

e.     Diligently and thoroughly performed a health history and physical examination and timely and accurately documented the results;

f.     Diligently and thoroughly assessed, and accurately documented Ronald Powers' behavior;

g.     Diligently and thoroughly arrived at an appropriate differential diagnosis upon examination;

h.     Appreciated the risks associated with having a hemodialysis catheter in place coupled with erratic behavior and/or administration of CPR;

i.     Appropriately observed patient's behavior and recognized that Ronald Powers was at an increased risk for injury to himself;

j.     Diligently and thoroughly assessed Ronald Powers' condition based upon his behavior;

k.     Ensured that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or her supervisor(s) were contacted regarding Ronald Powers' behavior;

l.     Ensured that Ronald Powers' vital signs and COWS score were assessed, assessed properly, and accurately documented;

m.     Timely and appropriately considered Ronald Powers' health history and symptoms together with presentation; and

n.     Other acts of professional negligence yet to be determined.

**D.**    **THE MANNER IN WHICH THE VIOLATION OF THE STANDARDS OF PRACTICE OR CARE WAS A PROXIMATE CAUSE OF THE INJURY CLAIMED IN THE NOTICE:**

The above-described breaches of the standard of care by LaTanya Meadows, RN, and Wellpath LLC were a proximate cause of the death of Ronald Powers by exsanguination, a consequence of a severed hemodialysis catheter in his right upper chest. The joint and several negligence of the aforementioned healthcare providers created a

foreseeable risk of injury and/or death to Ronald Powers. But for the joint and several negligence of the aforementioned healthcare providers, the injuries suffered by Mr. Powers, and his ultimate death, would have been prevented.  This resulted in severe injuries and damages to Plaintiff's decedent and the Plaintiff Estate, including but not limited to extensive pain and suffering before his untimely death, hospital expenses, emotional distress, humiliation, fright, loss of enjoyment of life, loss of society, companionship and support, and other damages, all of which are past, present, and future.

CHRISTOPHER ALLEN PARKER
Notary Public - Notary Seal
St. Louis City - State of Missouri
Commission Number 18545810
My Commission Expires May 20, 2022

_____
BETTY PEDERSON-CHASE, RN

Subscribed and sworn to before me
this 21st day of April, 2020

_____
Notary Public
County of St. Charles, State of Missouri

My Commission Expires: May 20 2022

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RONALD GAINES, as Personal
Representative for the Estate of
RONALD POWERS, Deceased,

     Plaintiff,                             Case No.
                                             Hon.

v.

COUNTY OF WAYNE,
SERGEANT LEONARD DAVIS,
SERGEANT STEVEN M. HUNTER,
SHIFT COMMAND SERGEANT
JEREMY LUCAS, INFIRMARY
SERGEANT MICHAEL GATSON, and
OFFICER SHANIQUE MADDOX,
in Their Individual and Official
Capacities; WELLPATH LLC, f/k/a
CORRECT CARE SOLUTIONS, LLC;
and LATANYA MEADOWS, R.N.,
jointly and severally.

     Defendants.

---

GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
Fieger, Fieger, Kenney & Harrington, P.C.
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555
d.dworetsky@fiegerlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiff, RONALD GAINES, as Personal Representative for the Estate of RONALD POWERS, deceased, by and through his attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**

By: /s/ David A. Dworetsky_____
GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

Dated: May 12, 2020