UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD GAINES,

       Plaintiff,                              Case No. 20-11186

vs.                                               HON. MARK A. GOLDSMITH

COUNTY OF WAYNE, et al.,

       Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART**
**THE WELLPATH DEFENDANTS' MOTION TO DISMISS (Dkt. 22)**

Plaintiff, Ronald Gaines, as personal representative of the estate of his father, Ronald Powers, brings this lawsuit pursuant to 42 U.S.C. § 1983 against multiple Defendants for actions that allegedly resulted in Powers's death. This matter is currently before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by two Defendants, Wellpath LLC, f/k/a Correct Care Solutions, LLC ("Wellpath") and Latanya Meadows, R.N. (collectively, the "Wellpath Defendants") (Dkt. 22). The Wellpath Defendants seek dismissal of Counts IV and VI in their entirety, as well as dismissal of the gross and general negligence claims of Count V. For the following reasons, the motion to dismiss is granted in part and denied in part.[1]

### I. BACKGROUND

The complaint sets forth the following factual allegations, which the Court presumes to be true for purposes of the present opinion. On December 8, 2017, Powers was pulled over while

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1

operating a vehicle for failing to signal. Am. Compl. ¶ 25 (Dkt. 14). He was then arrested on an unrelated warrant and taken to Wayne County Jail. Id. ¶¶ 26, 30. After Powers was booked, his daughter, Ronyetta Powers, called the jail to inform the facility of her father's health conditions. Id. ¶ 31. Powers's health conditions included a history of liver and adrenal cancer as well as end stage renal disease requiring hemodialysis and methadone for pain treatment. Id. ¶ 69. Due to Powers's methadone treatment, he required monitoring for opiate withdrawal symptoms, which is measured by a scoring system known as a clinical opiate withdrawal scale ("COWS"). Id. ¶ 70. At all times during Powers's detainment at the jail, Wellpath performed "health care services" for the jail. Id. ¶ 68.

When Powers entered the jail on December 8, 2017, he exhibited no erratic behavior; he was alert and did not speak in an abnormal manner. Id. ¶ 72. Thus, he was placed with the general population at the jail. Id. ¶ 73. However, on December 9, 2017, Powers had an elevated blood pressure and, as a result, was moved from the general population to the jail's infirmary for monitoring of his blood pressure. Id. ¶¶ 74-75. After being placed in the infirmary, Powers was not provided with dialysis, and his COWS score was not taken. Id. ¶ 76.

Beginning sometime on December 11, 2017 and continuing through the early morning hours of December 12, 2017, various jail officials observed Powers exhibiting "erratic" behavior in his cell, such as pacing, invading the personal space of other inmates, and talking to himself. Id. ¶¶ 43-44, 78. After being advised of Powers's erratic behavior, Meadows, a registered nurse employed by Wellpath, id. ¶ 19, checked Powers's blood glucose level, which was normal, id. ¶ 80. Without any further assessment, Meadows determined Powers was "fine" and moved him from the jail's infirmary to a holding cell. Id. ¶ 81.

2

At 4:00 a.m. on December 12, 2017, Powers was found passed out in his cell unresponsive and with blood pooling around his head. Id. ¶ 76. An emergency code was activated, and several nurses responded, including Meadows. Id. ¶ 52. The nurses attempted cardiopulmonary resuscitation, but Powers remained unresponsive. Id. ¶ 53. Powers was subsequently transported to a local hospital, where he was officially pronounced dead. Id. ¶ 57.

Following Powers's death, his son filed the instant lawsuit on behalf of Powers's estate, bringing several claims against the Wellpath Defendants arising out of their allegedly inappropriate handling of Powers's health conditions while he was detained at the jail.

In Count IV, Plaintiff brings malpractice, general negligence, and gross negligence claims directly against Wellpath. Broadly speaking, Plaintiff alleges that Wellpath failed to: (i) provide proper medical care to Powers; (ii) adequately supervise, direct, train, monitor, and control its health care providers; and (iii) draft, promulgate, adopt, and enforce rules that would enable its health care providers to render appropriate treatment to patients. Id. ¶ 117. Plaintiff alleges that Wellpath owed Powers a duty to perform these actions properly, pursuant to Michigan Compiled Laws ("MCL") §§ 333.20141 and 333.21513. Id. Plaintiff separately alleges that Wellpath had a duty to "provide care and treatment consistent with that of a reasonable and prudent medical facility, provider, and/or practice." Id. ¶ 116.

In Count V, Plaintiff brings malpractice, general negligence, and gross negligence claims directly against Meadows and vicariously against Wellpath. Id. ¶¶ 121-127. Broadly speaking, Plaintiff alleges that Meadows failed to provide proper medical care to Powers. In Count VI, Plaintiff brings general negligence and gross negligence claims directly against Meadows and vicariously against Wellpath. As in Count V, in Count VI Plaintiff alleges that Meadows failed to provide proper medical care to Powers. Id. ¶ 130. Finally, in Count VII, Plaintiff brings a § 1983

3

claim against the Wellpath Defendants for failing to provide Powers with reasonable medical care, in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments. Id. ¶¶ 131-149.[2]

## II. STANDARD OF DECISION

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555. Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Id. at 556. Accordingly, a motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can

---

[2] The Wellpath Defendants do not seek dismissal of Count VII, in part or in its entirety, in the instant motion to dismiss.

4

prove no set of facts in support of his claim which would entitle him to relief." Directv, 487 F.3d at 476 (6th Cir. 2007).

### III. ANALYSIS

As stated above, the Wellpath Defendants seek dismissal of Counts IV and VI in their entirety, as well as partial dismissal of Count V. The Court addresses each count in turn and reaches the following conclusions. With respect to Count IV, the motion to dismiss is denied because the Wellpath Defendants' have failed to show that Plaintiff has failed to state a claim for relief. With respect to Count V, the motion to dismiss is denied because the Wellpath Defendants have failed to put forth any arguments for dismissal. With respect to Count VI, the motion to dismiss is granted as to the gross negligence claim, as Plaintiff consented to this dismissal. However, the motion to dismiss is denied with respect to the negligence claim of Count VI, as dismissal of this claim would be premature.

#### A. Count IV

The Wellpath Defendants argue Count IV should be dismissed because the two statutes cited by Plaintiff in this count, MCL § 333.20141 and MCL § 333.21513, "do not in fact create a cause of action against non-hospital defendants like Wellpath." Defs. Mot. to Dismiss ("MTD") at 12 (Dkt. 22). The first statute provides licensure and certification requirements for health facilities and agencies; the second describes duties applicable to owners of licensed hospitals. It is unclear from the Wellpath Defendants' argument whether they are either (i) seeking dismissal on the basis that Plaintiff has attempted to bring a prohibited direct cause of action under MCL § 333.20141 or MCL § 333.21513 or (ii) attacking the sufficiency of Plaintiff's negligence allegations by suggesting that Plaintiff cannot show that the statutes imposed a duty of care on

5

Wellpath. Either way, the Wellpath Defendants fail to show that Plaintiff has failed to state a claim for relief in Count IV.

A reasonable reading of Count IV does not indicate that Plaintiff is attempting to bring a cause of action directly under these statutes. Rather, as the heading and language of Count IV reflect, Plaintiff expressly brings causes of action for "malpractice/ negligence/ gross negligence"—i.e. claims arising under common law. There is no language in the count suggesting that the statutes created the cause of action itself.

The count does reference the statutes, but in the context of duty, which is a separate element that must be established for a negligence or malpractice claims. Romain v. Frankenmuth Mut. Ins. Co., 762 N.W.2d 911, 913 (Mich. 2009). Count IV references MCL § 333.20141 and MCL § 333.21513 exclusively as one source of Wellpath's duty of care: Wellpath "had a direct duty pursuant to MCL 333.20141 and MCL 333.21513" to provide proper health care, training of health care providers, etc. Am. Compl. ¶ 117 (emphasis added). That language can be reasonably understood only as setting forth the source of the duty, not the source of the claim. Because Plaintiff does not bring causes of action directly under MCL § 333.20141 and MCL § 333.21513, the fact that these statutes may not create a cause of action against non-hospital defendants like Wellpath does not require dismissal of Count IV.

Whether the statutes created a duty of care, as distinct from creating a cause of action, is a separate question. Statutes may perform that function. West American Ins Co v. Meridian Mut Ins. Co., 583 N.W.2d 548, 551 (Mich. App. 1998) ("A legal duty or obligation may arise by contract, statute, constitution, or common law."). However, whether the statutes referenced in Count IV created such a duty here need not be resolved presently, because Plaintiff also relies on the common law as the source of Wellpath's duty of care, quite apart from the statutes. Am.

Compl. ¶ 116 ("[T]he standard of practice requires Defendant Wellpath to provide care and treatment consistent with that of a reasonable and prudent medical facility, provider, and/or practice.") (emphasis added). Such pleading in the alternative is certainly allowed. Fed. R. Civ. P. 8(d)(2). Thus, even if Plaintiff's reference to the statutes—whether as one of the sources of the claim or one of the sources of a duty—was erroneous, Count IV has an adequate alternative basis upon which to stand. Dismissal of Count IV is not warranted.

Because the Wellpath Defendants have failed to articulate a cognizable basis for dismissing Count IV, their motion to dismiss with respect to Count IV is denied.

### B. Count V

Although the Wellpath Defendants' motion is labeled, in relevant part, as a motion to dismiss the negligence and gross negligence claims of Count V, the Wellpath Defendants provide no analysis of Count V in the body of their motion. It is not the job of the Court to supply the Wellpath Defendants with arguments for dismissal of Count V. See Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975) (citation omitted). Nor will the Court speculate as to the grounds upon which the Wellpath Defendants may have intended to seek dismissal of Count V. Accordingly, the Wellpath Defendants' motion to dismiss with respect to Count V is denied.

### C. Count VI

The Wellpath Defendants seek to dismiss both the gross negligence claim and the general negligence claim of Count VI. With respect to the gross negligence claim, the Wellpath Defendants argue that "gross negligence is not recognized as an independent cause of action in Michigan," but, rather, "an exception to governmental immunity in Michigan." Defs. MTD at 17. Further, "'there is no reason to extend [that] protection . . . to a private entity merely because it contracts with the government.'" Id. (quoting Fareed v. G4S Secure Sols. (USA), Inc., 942 F.

7

Supp. 2d 738, 747-748 (E.D. Mich. 2013)).  Consequently, "[s]ince the Wellpath Defendants do not enjoy qualified immunity, Plaintiff cannot seek to apply an immunity exception against them." Id.  Plaintiff responds that, because "the Wellpath Defendants concede that they are not a governmental entity that would be subject to Michigan's [] Governmental Tort Liability Act, M.C.L. § 691.1407(2)(c)[,] . . . Plaintiff agrees to amend Count VI to include only claims of ordinary negligence against the Wellpath Defendants."  Pl. Resp. at 18-19 (Dkt. 30).  Because Plaintiff agrees to dismissal of this claim, the Court grants Wellpath Defendants' motion to dismiss with respect to the gross negligence claim of Count VI.

With respect to the general negligence claim, the Wellpath Defendants argue for dismissal on the basis that Plaintiff's allegations sound in medical malpractice.  Defs. MTD at 18-20. Plaintiff responds by stating that "the determination of whether a claim sounds in ordinary negligence or medical malpractice is generally a fact-intensive determination" and, therefore, "such a determination should be left for the close of discovery."  Pl. Resp. at 19.

The Court agrees with Plaintiff.  As the Michigan Supreme Court has explained, "[t]he fact that an employee of a licensed health care facility was engaging in medical care at the time the alleged negligence occurred means that the plaintiff's claim may possibly sound in medical malpractice; it does not mean that the plaintiff's claim certainly sounds in medical malpractice." Bryant v. Oakpointe Villa Nursing Centre, Inc., 684 N.W.2d 864, 870-871 (Mich. 2004) (emphasis in original).  Rather, to sound in medical malpractice, a negligence claim must: (i) "pertain[] to an action that occurred within the course of a professional relationship" and (ii) "raise[] questions of medical judgment beyond the realm of common knowledge and experience."  Id. at 871.  With respect to the second prong, "[i]f the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary

8

negligence." Id. at 872. "If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standard of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved." Id. At this stage of the proceedings, it is too early to tell whether the reasonableness of Meadows's actions could be assessed by lay jurors based on their common knowledge and experience. Determination of this issue will require discovery and further factual development. While this issue may be the appropriate subject of a future motion for summary judgment, it is not ripe for resolution on the merits at this time. Accordingly, the motion to dismiss is denied with respect to the negligence claim of Count VI.

## IV. CONCLUSION

For the foregoing reasons, the Wellpath Defendants' motion to dismiss is granted in part and denied in part. The motion is granted with regard to the gross negligence claim of Count VI. The motion is denied with regards to all other claims of Counts IV, V, and VI.

SO ORDERED.

Dated: February 25, 2021  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge