UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD GAINES, as Personal
Representative for the Estate of
RONALD POWERS, Deceased,

        Plaintiff,                    Case No. 20-11186

vs.                                 HON. MARK A.
GOLDSMITH

COUNTY OF WAYNE, et al.,

        Defendants.

_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART THE WELLPATH**
**DEFENDANTS' MOTION FOR ATTORNEY FEES AND EXPERT FEES**
**(Dkt. 70)**

After his deadline to file expert disclosures, Plaintiff filed a motion seeking to

substitute Nurse Ralf Salke for Nurse Betty Pederson-Chase as an expert witness

(Dkt. 59). The Court concluded that Plaintiff "failed to carry his burden in showing

that 'good cause' exists to allow the substitution or that his failure to timely disclose

his new expert was 'substantially justified or harmless.'" 12/20/21 Op. at 4 (Dkt.

68). However, rather than excluding Nurse Salke as an expert, the Court elected to

impose the alternative sanction of ordering Plaintiff to pay the Wellpath Defendants'

costs associated with the substitution.  Id. at 5.[1]  This matter is now before the Court

on the Wellpath Defendants' motion for attorney fees and expert fees (Dkt. 70).[2]

Specifically, the Wellpath Defendants seek to recover $7,718.50 in attorney fees and

$7,080.00 in expert fees, totaling $14,798.50.  For the reasons that follow, the Court

awards the Wellpath Defendants a portion of their requested sum.  Accordingly, their

motion is granted in part and denied in part.

## I. ANALYSIS

Pursuant to Federal Rule of Civil Procedure 37(c)(1), a court may—as the

Court did here—"order payment of the reasonable expenses, including attorney's

fees, caused by the failure" to timely substitute an expert witness.[3]  Having already

determined that the Wellpath Defendants are entitled to fees associated with the

substitution, the Court must next address whether the Wellpath Defendants' asserted

fees are reasonable.  "[T]he district court has discretion in determining the amount

---

[1] The Wellpath Defendants include Defendants Wellpath LLC and Latanya Meadows.

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the motion, the briefing includes Plaintiff's response (Dkt. 71).

[3] Plaintiff argues—as he did in prior briefing—that an award of fees and costs is inappropriate. Resp. at 1.  The Court has already decided that such an award is appropriate.  See 12/20/21 Op. at 5; 2/4/22 Order at 1–2 (Dkt. 74).  The Wellpath Defendants should not suffer because Plaintiff substituted an expert on an untimely basis, even if Plaintiff's only error was in picking an expert who later "suddenly and unexpectedly indicated that she would no longer support her Affidavit." Resp. at 4.  The time for arguing whether an award of fees and costs is appropriate has come to an end.  The only issue left for the Court to decide is the amount of the fees and costs that should be awarded.

of a fee award[, which] is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  The Court considers in turn the appropriate amount of attorney fees and expert fees.

### A.  Attorney Fees

The Court determines the amount of reasonable attorney fees by applying the "lodestar" method, which involves multiplying the number of hours reasonably expended by a reasonable hourly rate.  Id. at 433.

The Wellpath Defendants assert that the reasonable hourly rate is $215.  Mot. at 3.  They submit evidence supporting that this rate is reasonable, and Plaintiff does not dispute the reasonableness of the rate.  See State Bar of Mich. Attorney Income and Billing Rate Summary Report at 5 (Dkt. 70-1) (showing that, as of 2020, the mean billing rate for private practitioners in Southeastern Michigan was $245); Biography of Attorney Lanesky (Dkt. 70-2) (reflecting that defense counsel works in a small-to-mid-size law firm in Troy, Michigan, and has over 20 years of experience).  Accordingly, the Court utilizes $215 as the reasonable hourly rate.

As for the number of hours reasonably expended, the party seeking an award of fees bears the burden of "submit[ting] evidence supporting the hours worked . . . ."  Hensley, 461 U.S. at 433.  The Wellpath Defendants seek to recover 35.9 hours

3

of attorney time, Mot. at 4, but have submitted evidence establishing only 35.6 hours of attorney time.  See Billing Statements (Dkt. 70-3).  Their billing statements reflect 10.6 hours associated with the prior expert and 25 hours associated with Plaintiff's motion to substitute his expert witness.  Id.  Plaintiff argues that the Wellpath Defendants are asking for him to "pay for [their] . . . defense of the case."  Resp. at 2.  He asserts that Nurse Salke's report does not materially differ from the prior expert's, and, therefore, "[t]he time spent to review Nurse Salke's report is the only cost incurred by Wellpath as a result of the substitution."  Id. at 4.

As Plaintiff suggests, reasonable hours associated with an untimely expert substitution do not include all hours associated with the prior expert as well as all hours associated with the new expert.  Such a result would create a windfall, as certain fees associated with an expert report would have been incurred even if the expert was not later substituted.  See Hensley, 461 U.S. at 434 (explaining that courts should exclude from the calculation of reasonably expended hours those hours that are "excessive, redundant, or otherwise unnecessary").  Indeed, other courts have required the party seeking an untimely substitution of experts to pay only the other party's wasted costs—i.e., costs incurred that would not have been incurred absent the substitution.  See, e.g., Assaf v. Cottrell, Inc., No. 10 CV 0085, 2012 WL 245196, at *5 (N.D. Ill. Jan. 26, 2012) (awarding costs for resources wasted preparing for a disqualified expert); Vincent v. Omniflight Helicopters, Inc., No. 08-C-0572, 2009

4

WL 4262578, at *4–5 (E.D. Wis. Nov. 24, 2009) (permitting plaintiff to substitute an expert after close of discovery on the condition that the plaintiff remedy the prejudice of "waste of time and money" by reimbursing the defendant for expenses incurred in deposing the original expert).

Here, the Wellpath Defendants clearly would not have incurred the attorney fees associated with Plaintiff's motion to substitute its expert witness absent the substitution. The request for 25 hours, however, appears excessive. Briefing and the hearing should not have reasonably consumed more than 15 hours. The Court excludes the excess.

The attorney fees for the 10.6 hours associated with the prior expert require a nuanced analysis. As Plaintiff points out, the Wellpath Defendants would have incurred at least some of these costs even absent the substitution, given that there is some overlap in the opinions expressed in Nurse Pederson-Chase's and Nurse Salke's reports. But the differences between the reports are material. See 12/20/21 Op. at 3–4 ("The substitution is not merely a change in the players who will take the field; Nurse Salke's opinion changes Plaintiff's theory of the case. As the Wellpath Defendants point out, Nurse Salke's opinion shifts focus from the care rendered by Defendant Nurse Latanya Meadows to care rendered by other nurses and staff."). Consequently, the Wellpath Defendants are entitled to some portion of the 10.6 hours associated with the prior expert. Because "[t]here is no precise rule or formula

for making these determinations," the Court "may simply reduce" the number of hours to ensure that a party does not receive a windfall.  Hensley, 461 U.S. at 436–437.  "The court necessarily has discretion in making this equitable judgment."  Id. at 437.  Exercising its discretion, the Court finds that 5.3 hours—or 50% of 10.6 hours—is a reasonable measure of the amount of time that defense counsel wasted on the prior expert.  Accordingly, the Court finds that the Wellpath Defendants have established a total of 20.3 hours associated with the substitution.

Multiplying the number of reasonably expended hours by the reasonable hourly rate of $215 results in a total of $4,364.50 in attorney fees.  Plaintiff will be held responsible for this amount.

## B. Expert Fees

In addition to attorney fees, the Wellpath Defendants seek $7,080.00 in expert fees "incurred to review and defend the original allegations of the prior expert affidavit of merit, expert disclosure, and the new allegations."  Mot. at 4.  Invoices from the defense experts reflect that the Wellpath Defendants were charged $2,025 by East Valley Legal Nurse Consulting and $4,410 by KP Consulting, LLC before the expert substitution.  Invoices at PageID.880, 882–883 (Dkt. 70-4).  After the substitution, the Wellpath Defendants were charged $135 by East Valley for "[u]pdated plaintiff expert report review" and $510 by KP Consulting for "[r]eview of newly acquired plaintiff nursing expert report."  Id. at PageID.881, 884.

6

As with the attorney hours associated with the prior expert, some, but not all, of the defense expert fees would have been incurred even absent the substitution. The Court, therefore, finds that the Wellpath Defendants are entitled to half of the defense expert fees that they request—i.e., $3,540.

## II. CONCLUSION

For the foregoing reasons, the Wellpath Defendants' motion for attorney fees and expert fees (Dkt. 70) is granted in part and denied in part.  The Wellpath Defendants are awarded $4,364.50 in attorney fees and $3,540 in expert fees, totaling $7,904.50.

Dated:  July 5, 2022                              s/Mark A. Goldsmith
                                                          Mark A. Goldsmith
Detroit, Michigan                              United States District Judge