UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD GAINES, as Personal
Representative for the Estate of
RONALD POWERS, Deceased,

    Plaintiff,

vs.

COUNTY OF WAYNE, et al.,

    Defendant.
_____/

Case No. 20-11186

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING THE WELLPATH DEFENDANTS' MOTION TO PRECLUDE
PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM RALF SALKE, R.N.
(Dkt. 77), (2) GRANTING THE WAYNE COUNTY DEFENDANTS' MOTION TO
PRECLUDE TESTIMONY FROM PLAINTIFF'S EXPERTS AARON WESTRICK AND
SALKE (Dkt. 86), AND (3) ORDERING THE PARTIES TO FILE A JOINT
MEMORANDUM REGARDING THE WELLPATH DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (Dkt. 84)**

Plaintiff, Ronald Gaines, as the personal representative of the estate of his father, Ronald Powers, brings this lawsuit pursuant to 42 U.S.C. § 1983. This matter is before the Court on the Wellpath Defendants' motion to preclude Plaintiff from eliciting expert testimony from Ralf Salke, R.N. (Dkt. 77), as well as the Wayne County Defendants' motion to preclude testimony from Plaintiff's experts Aaron Westrick and Salke (Dkt. 86).[1,2] For the following reasons, the Court

---

[1] The Wellpath Defendants include Wellpath LLC, a private provider of healthcare services for the Wayne County Jail, and Latanya Meadows, a Wellpath nurse. Am. Compl. ¶¶ 15, 17, 19 (Dkt. 14). The Wayne County Defendants include Wayne County; Sgt. Leonard Davis and Sgt. Steven Hunter, both employed by the County; Michael Gatson, a jail infirmary sergeant; Jeremy Lucas, a sergeant at the jail; and Shanique Maddox, a police officer at the jail. Id. ¶¶ 8–13.

[2] There are also two motions for summary judgment pending in this matter. As noted below, the Wellpath Defendants' motion for summary judgment (Dkt. 84) relies heavily on their argument that Salke should be precluded from testifying.

grants both motions.³

## I. BACKGROUND

The Court has previously set forth the relevant allegations. 2/25/21 Op. at 1–4 (Dkt. 34). Accordingly, the Court will not repeat these details in full. In short, Plaintiff alleges that nurses, correctional officers, and other personnel failed to properly observe and care for Powers, who had health conditions including end stage renal disease requiring hemodialysis and methadone for pain treatment, while he was incarcerated at the Wayne County Jail. As a result, Powers died in custody on December 12, 2017.

Plaintiff has retained Westrick and Salke as experts in this case. According to Westrick, he has been "recognized as an expert concerning lightweight armor, use-of-force, and criminal justice policy and practice." Westrick Report at PageID.3254 (Dkt. 86).⁴ Westrick offers opinions as to the involvement of the Wayne County officers in Powers's death, concluding that "the Wayne County Sheriffs [sic] Office and his/her designees denied civil and corrections inmate rights stated in legal, state policy, department policy and American Correctional Association Standards" because they "failed to recognize the situation and serious medical condition of Mr. Powers at booking on Friday[,] December 8, 2017 until his death in-custody on December 12, 2017." Id. at PageID.3258.

Salke describes himself as an "independent nurse consultant working in correctional health

---

³ Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing for the Wellpath Defendants' motion includes Plaintiff's response (Dkt. 88) and the Wellpath Defendants' reply (Dkt. 89). The briefing for the Wayne County Defendants' motion includes Plaintiff's response (Dkt. 90) and the Wayne County Defendants' reply (Dkt. 93).

⁴ Instead of filing Westrick's report as an attachment to their motion, the Wayne County Defendants filed the report in the same document as their motion. See Wayne Cnty. Mot. at PageID.3253–3274.

2

care." Salke Report at 1 (Dkt. 77-4). Salke renders opinions regarding the roles that Wellpath, Meadows, and Wayne County employees played in Powers's death. Id. at 16–19. Salke's ultimate opinion is that, "[h]ad Mr. Powers been placed in the infirmary immediately upon entry into Wayne County Jail, been monitored from that time for his [b]lood [p]ressures/treatment, his weakness been assessed, safety measures for his external catheter, engagement/additional follow up staff to Mr. Powers, had appropriate dialysis treatment and initializing discussions with him regarding the adverse outcomes of refusing such treatment, ensuring proper assessment of his altered mental status (including vital signs/calls to providers) and constant observation while in a holding cell, Mr. Powers in all likelihood would not have passed away in the early morning of December 12, 2017." Id. at 21.

## II. ANALYSIS

Under Federal Rule of Evidence 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the following criteria are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 places a special obligation on the trial court to be a gatekeeper, ensuring that all experts are qualified and that their testimony is both relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 597 (1993); see also Kumho Tire Company v. Carmichael, 526 U.S. 137, 148–149 (1999). The proponent of the expert must

3

establish admissibility by a preponderance of the evidence. Nelson v. Tenn. Gas Pipeline, Co., 243 F.3d 244, 251 (6th Cir. 2001).

Defendants challenge Westrick's and Salke's opinions on several grounds. Because the Court determines that Westrick is unqualified and Salke's opinions are unreliable, both witnesses are precluded from testifying as experts, and the Court need not address the other grounds for preclusion raised by Defendants.

### A. Qualifications

As noted above, Westrick describes himself as an "expert concerning lightweight armor, use-of-force, and criminology justice policy and practice." Westrick Report at PageID.3254. The Wayne County Defendants argue that Westrick is not qualified to testify as an expert regarding correctional officers' care and observations of sick inmates because Westrick's expertise is in law enforcement, not the corrections or medical fields. Wayne Cnty. Mot. at 5. In response, Plaintiff plainly asserts that Westrick is "qualified to testify as to the accepted police policy and best practices" based "upon his education and experience." Pl. Resp. to Wayne Cnty. Mot. at 10–12.

Plaintiff's response misses the mark. The fact that a witness has expertise in the broad fields of law enforcement and criminal justice does not prove that the witness is qualified to testify as an expert regarding the duties of correctional officers to monitor and care for inmates' medical needs. Another court was confronted with a nearly identical situation in Hessler v. Cnty. of St. Croix, No. 08-cv-166-bbc, 2009 WL 728451 (W.D. Wis. Mar. 16, 2009), a case that arose from an inmate's death while in custody in a Wisconsin jail. The plaintiff retained an expert to offer opinions as to how the jail staff's actions contributed to the decedent's death. Id. at *1. The district court found the witness unqualified to testify as an expert regarding the observation and care of sick inmates:

4

> Although [the witness] . . . has extensive law enforcement experience with the Birmingham, Alabama police department and has taught courses on police procedures and the criminal justice system, he has no real experience in the correctional setting. What little experience he has is more than 20 years in the past. He has taught no courses on the subject of corrections, taken no courses except one that he took when he [was] studying for his bachelor's degree, done no writing in the field, never submitted an article for peer review, never conducted any studies, never done any research in corrections, never attended any conferences on the subject. He has no knowledge of jails in Wisconsin except what he has learned in the course of preparing for this case. As he testified at his deposition, his main source of knowledge regarding the medical care of inmates in the jail setting is the review of cases in which he has served as an expert.
>
> . . .
>
> [The witness] . . . fails at the threshold. He does not qualify as an expert in the field of corrections generally or in the particular field of the care and observations of ill inmates in the jail setting, for all the reasons set out above.

Id. at *1–2.

Westrick is even more unqualified than the witness in Hessler to provide expert testimony regarding the observation and medical care of inmates in the jail setting. Whereas the witness in Hessler had a "little" experience in the correctional setting at some point in his career, Westrick does not purport to have any experience in this setting. See Westrick Report. Nor does Westrick's report—or Plaintiff's response—assert that Westrick is qualified to testify as an expert regarding the medical care of inmates in the correctional setting by virtue of his training or education.

It may very well be the case that Westrick is qualified to provide expert testimony in an action that, unlike this matter, involves lightweight armor or use of force. But Plaintiff has failed to prove by a preponderance that Westrick is qualified to testify as an expert in the field of correctional officers' care and observations of sick inmates. Accordingly, Westrick is precluded from testifying as an expert.

### B. Reliability

Expert testimony must be "the product of reliable principles and methods." Fed. R. Evid.

5

702(c). Determination of whether an expert's testimony is reliable is a "flexible" one, Daubert, 509 U.S. 593–594; a trial judge has "considerable leeway" in deciding "how to go about determining whether particular expert testimony is reliable," Kumho Tire Co., 526 U.S. at 152. "The task for the district court in deciding whether an expert's opinion is reliable is . . . to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529–530 (6th Cir. 2008). A court should exclude an expert's opinion if "there is simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

The crux of the challenge against the reliability of Salke's opinions is that his report fails to explain how or why he reached the conclusion that Defendants should have taken certain actions and that their failure to do so caused Powers's death. Wellpath Mot. at 16–17. Plaintiff does not directly address this argument. Instead, Plaintiff asserts, in conclusory fashion, that Salke's report sets forth "the sources/principles that form the basis of his opinions." Pl. Resp. to Wellpath Mot. at 13.

Again, Plaintiff misses the mark. That an expert's report lists the materials that the expert reviewed in rendering his opinion is insufficient to satisfy the reliability requirement. "An expert opinion must set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation." R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262, 271 (6th Cir. 2010); see also United States v. Gallion, 257 F.R.D. 141, 149 (E.D. Ky. 2009) (excluding, as unreliable, the opinions of an expert who "identifie[d] the materials he relied upon in forming his opinions" but did "not adequately explain how he reached his opinions based on the materials he reviewed"). Put differently, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." R.C. Olmstead, 606 F.3d at 271 (punctuation

6

modified). To satisfy this requirement in the present case, Salke should have explained how and why (i) Defendants' conduct fell below the applicable standard of care; (ii) Salke knows that Defendants' conduct was problematic (i.e., based on Salke's experience, training, review of policies or procedures, etc.); and (iii) Defendants' conduct caused Plaintiff's death. Salke's report falls far short of doing so. As an example, Salke opines that Meadows failed to immediately chart a finger stick of Powers. See Salke Report at 18. But Salke does not explain either his basis for asserting that a nurse should immediately chart such a result or how he arrived at the conclusion that this charting error resulted in Powers's death.

Plaintiff has failed to carry his burden in showing that Salke's opinions are unreliable. The Court, therefore, precludes Salke from testifying as an expert in this matter.

### III. CONCLUSION

For the foregoing reasons, Westrick and Salke are precluded from testifying as experts. Accordingly, the Court grants the Wellpath Defendants' motion to preclude Plaintiff from eliciting expert testimony from Salke (Dkt. 77), as well as the Wayne County Defendants' motion to preclude testimony from Plaintiff's experts Westrick and Salke (Dkt. 86).

The Wellpath Defendants' pending motion for summary judgment (Dkt. 84) relies heavily on their argument that Salke's testimony should be precluded. Because the Court has precluded Salke's expert testimony, Plaintiff must file, within three weeks of the date of this opinion and order, a supplemental memorandum discussing why summary judgment should not be granted in favor of the Wellpath Defendants. The Wellpath Defendants must file a supplemental memorandum responding to Plaintiff's argument within two weeks of receiving Plaintiff's supplemental memorandum.

SO ORDERED.

Dated: July 14, 2022      s/Mark A. Goldsmith
    Detroit, Michigan      MARK A. GOLDSMITH
    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 14, 2022.

s/William Barkholz, in the absence
of Karri Sandusky
WILLIAM BARKHOLZ
Case Manager